UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

**RICHARD BOYD**    *    **CIVIL ACTION NO. 14-2479**

**VERSUS**    *    **JUDGE DOHERTY**

**COMMISSIONER OF SOCIAL SECURITY**    *    **MAGISTRATE JUDGE WHITEHURST**

REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Richard Boyd, born August 12, 1983, filed applications for a period of disability, disability insurance benefits and supplemental security income payments on June 1, 2012, alleging disability as of February 1, 2008, due to learning disability, anxiety, back pain and light headaches.[1] (Tr. 141, 171).  After denial of the applications, claimant requested a hearing, which was held on March 4, 2013.

On June 11, 2013, the Administrative Law Judge ("ALJ") issued a Decision denying the applications.  Following the Appeals Council's denial of claimant's request for review on July 24, 2014, claimant filed an action for judicial review with this Court on August 12, 2014.

FINDINGS AND CONCLUSIONS

Standard of Review

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision

---

[1] Claimant's date last insured was June 30, 2011.  (Tr. 8).  Thus, he must establish a disabling condition on or before the date last insured to be eligible for benefits.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

is supported by substantial evidence on the record as a whole. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. *Id*.

## **Burden of Proof**

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. *Cook,* 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 Fed.Appx. 775, 778 (5th Cir. 2015) The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified. *Id*. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

## Analysis

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony*, 954 F.2d at 292.

In fulfillment of Fed. R. Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

## Medical Evidence

On a previous application for benefits, Alfred Buxton, Ph.D., performed a consultative mental evaluation of claimant on August 20, 2008. (Tr. 233). On examination, claimant's verbal

and expressive language skills were good, recent and remote memories were intact, and ability to attend and concentrate was good. (Tr. 234). Cognitions were simple and concrete, and mood was even with congruent affect.

On Wechsler Adult Intelligence Scale ("WAIS")-III testing, claimant achieved a verbal IQ score of 71, performance score of 74, and full-scale score of 70. Dr. Buxton concluded that claimant was in the borderline range of subaverage general intellect with commensurate adaptive living skill development. He found that at best, claimant was marginally competent to manage his personal affairs.

Dr. Buxton further found that, with gains in maturation and experience, claimant would also gain independence and self-sufficiency. He opined that claimant was bright enough to understand simple instructions and commands, and would have difficulty with more complex instructions and commands. (Tr. 235). He noted that claimant should be able to tolerate the frustration and stress encountered in the job setting. He observed that claimant was friendly, and could probably establish and maintain mutually rewarding relationships with co-workers and supervisors. His Global Assessment of Functioning ("GAF") score was 65 over the prior 12 months.

Sandra Durdin, Ph.D., performed a consultative examination of claimant on July 20, 2010. (Tr. 237). At that time, he alleged having a learning disability and mental problems. Dr. Durdin observed that claimant was "more capable than he presented himself to be," and that his responses were "very inconsistent." She stated that the information he provided "cannot be regarded as reliable." He also indicated that it was his first application for benefits.[2]

---

[2] Claimant, however, had filed a previous application for benefits. (Tr. 30-31).

On examination, claimant's memory and overall cognitive skills could not be properly assessed because of "malingering." (Tr. 238). His evaluation results were invalid due to malingering. He appeared street-wise and manipulative. (Tr. 239). He was "very inconsistent and deliberately distorted answers at times." He tried to present as "incapable of doing anything at all."

Dr. Durdin's assessment was malingering on mental status testing, rule out impulse control disorder, and rule out learning disorder, NOS. She found that claimant's ability to understand, remember and carry out simple instructions and familiar detailed instructions was adequate. She stated that he should be able to do repetitive, simple tasks. His ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was fair.

Claimant appeared impulsive and might not always attend to all options in making choices. Dr. Durdin noted that his ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek was fair. He gave the impression that he might slack if he could. His ability to relate to others, including supervisors and co-workers, was adequate. His ability to tolerate the stress and pressure associated with day-to-day work activity and demands was fair. Dr. Durdin concluded that claimant would need some structure, but this alone would not preclude all forms of work.

On September 29, 2012, Dr. Erik Soine performed a consultative examination. (Tr. 245). Claimant alleged a learning disorder, stating that he was a "slow learner" and "cannot keep up." He next claimed an anxiety disorder and a "questionable history" of bipolar disorder. Additionally, he reported back pain from falling a couple of times, but had no history of physical therapy and no current treating physician. Further, he complained of "pinching" light headaches every eight hours, lasting two hours each. He took no medications to relieve his pain. (Tr. 246).

Claimant reported that he had never worked.[3] He stated that he could dress and feed himself, stand for one hour, walk for 30 minutes, sit for one hour, and lift 50 pounds. He reported that he was unable to drive a car, but could sweep, mop, vacuum, cook, do dishes, shop, climb stairs and mow grass.

On examination, claimant was able to ambulate without difficulty. He could get on and off the exam table, up and out of a char, and dress and undress without difficulty. He had 2+ pulses, normal gait, 5/5 grip strength and good fine and gross manipulative hand skills. (Tr. 247).

Range of motion was normal. Straight-leg raising was negative. He laid straight back on the exam table, and did not roll to his side to lie on his back. He was able to walk on his heels, walk on his toes, squat all the way to the ground and walk heel-to-toe and tandem without difficult.

On mental exam, claimant was able to follow very simple commands with coaching. He had no problems comprehending any tasks. He did not appear overly nervous, and had a normal affect.

Neurologically, claimant's motor strength was 5/5 in all proximal muscle groups. He had no sensory deficits. Cranial nerves were grossly intact. Deep tendon reflexes were unremarkable.

Lumbosacral x-rays showed normal bony alignment and no obvious bony abnormalities. Overall, they were within normal limits.

As to claimant's learning disorder, Dr. Soine noted that claimant had some difficulty comprehending some of the vocabulary used during the exam, which an adult should be able to comprehend. He found claimant's overall cognitive level to be somewhat delayed, but noted that he was able to follow simple directions and simple commands quite easily. Overall, he found that

---

[3]At the hearing, claimant testified that his statement to Dr. Soine that he had never worked was a "mistake," and that he knew that he was not telling the truth when he said it. (Tr. 57-58).

claimant would have difficulty with complex cognitive tasks while working; however, he should be able to complete simple manual tasks. Claimant had no physical limitations on examination.

As to claimant's other complaints, Dr. Soine found that there was not enough evidence to state a functional limitation as to his anxiety disorder or light headaches. Regarding his back pain, he noted that claimant had full range of motion in his lower lumbar spine, normal x-rays, and no radicular signs; therefore, he had no limitation. Dr. Soine opined that overall, claimant's cognition and development did seem to be delayed, but physically he was able-bodied and was able to follow simple directions.

On August 28, 2012, Jack Spurrier, Ed.D., a state agency medical consultant, completed a Psychiatric Review Technique ("PRT") in which he evaluated claimant under Listing 12.05 for mental retardation. (Tr. 85). He determined that there was insufficient evidence to substantiate the presence of a disorder.

On October 15, 2012, Dr. Spurrier completed a PRT in which he evaluated claimant under Listing 12.02 for organic mental disorders. (Tr. 74). Dr. Spurrier determined that claimant had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 74).

In the Mental Residual Functional Capacity ("RFC") Assessment, Dr. Spurrier found that claimant had no understanding and memory limitations. (Tr. 76). He was not significantly limited as to his ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 76-77). He was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without special supervision. (Tr. 76). He had no social interaction or adaption limitations. (Tr. 77).

Dr. Johnny B. Craig, a state agency medical consultant, determined that there was no evidence of a severe physical impairment limiting claimant's ability to work. (Tr. 84).

### Hearing Testimony

At the hearing on March 4, 2013, claimant was 29 years old. (Tr. 33). He testified that he had received child disability benefits for his mental health impairments until he attained age 18. (Tr. 30-31). He testified that he had anxiety and left "stuff" behind, for which he had started taking "nerve medicine" in early 2013. (Tr. 31). He stated that he had never gone to mental health, and had not seen a counselor since he was a child.

As to complaints, claimant testified that he had problems with following instructions and putting things back in place. (Tr. 43-44). He also said that he had trouble getting along with people. (Tr. 44). He reported that Dr. John Tassin had prescribed Buspirone, but he had been out of medicine for a while. (Tr. 45).

Regarding activities, claimant testified that he did chores at his mother's house, such as washing dishes, prep cooking, sweeping, mopping, cleaning the bathroom, making beds and folding clothes. (Tr. 40). He had a Texas driver's license, but had not taken the Louisiana test. (Tr. 39). He stated that he had completed 12th grade in special education classes. (Tr. 39, 44). He said he could write a simple letter, but it was hard for him to make change. (Tr. 39).

As to experience, claimant testified that he had worked as a laborer, offshore galley hand, farm hand, and in maintenance at a pool hall and Wal-Mart. (Tr. 40-41, 54). He said that he had been discharged from Wal-Mart for being late seven times. (Tr. 42).

Claimant's pastor, Dillard Duplechain, testified that claimant had been coming to church regularly for almost two years. (Tr. 47). Pr. Duplechain reported that he had given claimant simple jobs at the church, such as washing dishes and sweeping floors, for 10 to 15 hours a week. (Tr. 48-50). He stated that claimant was "pretty forgetful," needed supervision at all times, and had trouble following even simple instructions. (Tr. 48, 50-51).

The vocational expert ("VE"), Thomas G. Mungall, classified claimant's past work as a galley hand as medium with a Specific Vocational Preparation ("SVP") of 2; general farm worker as heavy with an SVP of 2, and commercial or institutional cleaner as heavy with an SVP of 2. (Tr. 58-59). Then, the ALJ posed a hypothetical in which she asked the VE to assume a claimant of the same age, education and past work experience; who had no exertional limits but had limitations to unskilled, simple, routine, repetitive tasks that could be learned in 30 days or less with short demonstration and oral directions. (Tr. 59). In response, Mr. Mungall testified that claimant could return to his past work.

When the ALJ changed the hypothetical to assume a claimant who needed the assistance of a job coach, the VE testified that claimant would still be able to return to his past work. (Tr. 59-60). However, he opined that such restriction would take claimant out of the realm of competitive employment and into the realm of sheltered employment if it was an ongoing need. (Tr. 60).

The ALJ changed the hypothetical again to assume a claimant who was limited to unskilled, simple, routine repetitive tasks that could be learned in 30 days or less with minimal direction from

9

a supervisor, Mr. Mungall stated that he would be able to return to his past relevant work. (Tr. 60-61). He also identified other jobs that claimant could perform, such as housekeeping cleaner, of which there were 877,980 jobs nationally and 15,600 statewide; kitchen helper, of which there were 504,280 jobs nationally and 5,850 statewide, and grocery packer or bagger, of which there were 666,860 jobs nationally and 3,450 statewide. (Tr. 61).

## Argument

Claimant argues that: (1) the ALJ erred in failing to find him disabled due to the multitude of his severe impairments; (2) the ALJ erred in relying heavily on the vocational expert's testimony, and (3) claimant should be found disabled because of the letter from the State of Louisiana, Department of Health and Hospitals ("DHH"), Acadiana Area Developmental Disabilities indicating that he was approved for this program because of his mental retardation.[4]

First, claimant argues that the ALJ erred in failing to find him disabled due to his multiple impairments.

In the Decision, the ALJ found that claimant's impairments of learning disorder and borderline intellectual functioning were severe, but that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, App. 1. (Tr. 10).

---

[4] The Commissioner argues that claimant's case should be dismissed for his failure to comply with the Court's Scheduling Order. That Order provides that "[e]ach contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position." [rec. doc. 9, ¶ I(1)(c)]. While the undersigned observes that claimant's counsel has not specifically complied with this Order, the undersigned was able to assess his arguments. **The undersigned cautions that counsel's failure to comply with the Scheduling Order requirements in the future may subject him to sanctions under Fed. R. Civ. P. 16.**

In support of his findings, the ALJ gave "great weight" to the opinion of Dr. Buxton, who found that claimant was bright enough to understand simple instructions and commands, would be able to tolerate the frustration and stress of a job setting, and could establish and maintain mutually rewarding relationships with coworkers and supervisors alike. (Tr. 15, 235). She also gave "great weight" to Dr. Durdin's opinion that claimant had adequate ability to understand, remember, and carry out simple instructions and familiar detailed instructions. (Tr. 15, 239). She further noted that Dr. Durdin considered claimant to be a malingerer on mental status testing, and he tried to present as incapable of doing anything at all. (Tr. 237-38). The ALJ's credibility assessment is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Regarding claimant's physical impairments, the ALJ gave "great weight" to Dr. Soine's opinion that claimant had no physical impairments and was capable of performing simple manual tasks. (Tr. 15, 247). Additionally, the ALJ gave "significant weight" to the opinion of the physical medical consultant, Dr. Johnny Craig, who determined that claimant had no evidence of any serious limitation on his ability to work from his alleged physical impairments of back pain and headaches. (Tr. 84).

The undersigned further observes that there are no records from a treating physician, other than a notation that claimant had seen Dr. A. John Tassin on January 8, 2013. (Tr. 225). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of

debilitating symptoms); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). As the ALJ's findings are supported by the evidence, they are entitled to deference.

Next, claimant asserts that the ALJ erred in relying heavily on the vocational expert's testimony.

At the hearing, the ALJ posed a hypothetical in which he asked Mr. Munghall if a claimant of the same age, education and past work experience, with no exertional limitations but restrictions to unskilled, simple, routine, repetitive tasks that could be learned in 30 days or less with short demonstration and oral direction, could return to his past work. (Tr. 59). In response, the VE testified that he was capable of performing his past relevant work, along with other jobs including housekeeping cleaner, kitchen helper, and grocery packer or bagger. (Tr. 59, 61). As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, claimant argues that he should be found disabled because of the letter from DHH indicating that he was approved for Developmental Disability supports or services due to mental retardation.

The courts may not take new evidence, and may only remand for that purpose under the discretionary standard established by law. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987). When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this

new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett*, 67 F.3d at 567.

Here, the letter from DHH indicating that claimant was approved for participation in the Developmental Disability supports or services was dated August 30, 2013. [rec. doc. 10, Exhibit]. This letter was dated after the ALJ's decision rendered on June 11, 2013. (Tr. 16). Claimant did not submit this letter until he filed his brief in this Court on February 4, 2015. The Appeals Council declined review of the ALJ's decision on July 24, 2014, nearly a full year after the August 30, 2013 letter. (Tr. 1). He has not shown good cause for his failure to incorporate this evidence into the record in a prior proceeding.

In addition to failing to show good cause for untimely submitting this report, claimant has also failed to show that this new evidence is material. Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

As to the "new" letter and attachments to claimant's brief, review shows that these records do not pertain to the relevant time period. The Statement of Approval from the DHH was dated August 30, 2013, which was well after claimant's onset and application dates, as well as the Commissioner's decision.

To warrant remand, the new evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567. As the evidence sought to be submitted by claimant

13

falls outside of the relevant time period and concerns either a subsequently acquired disability or the deterioration of a condition that was not previously disabling, it is not material to this proceeding. The appropriate action regarding these facts is to use the evidence as the basis for a new disability application.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice. Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 6th day of October, 2015, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE